UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAPHNE CHAU,<br><br>　　　　Plaintiff,<br><br>v.<br><br>EMC CORPORATION, EMC PERIPHERALS, INC., KRISTIE DREW, NICOLE DESMARAIS, SHAYNA FISHER, IVY MILLMAN, DAVID NOY, AND DOES 1 THROUGH 100, inclusive<br><br>　　　　Defendants. | Case No. C-13-04806-RMW<br><br>**ORDER: DENYING MOTION TO REMAND; GRANTING MOTION TO COMPEL ARBITRATION; DENYING MOTION TO STRIKE AS MOOT; DISMISSING CASE.**<br><br>[Re Docket Nos. 50, 51, 52] |

Plaintiff Daphne Chau filed this employment discrimination lawsuit against defendants in the Santa Clara County Superior Court, and defendants EMC Corporation, EMC Peripherals, Inc., Kristie Drew, Nicole Desmarais, Shayna Fisher, Ivy Millman, and David Noy (collectively "defendants") removed the case to this court. Dkt. No. 1. Plaintiff's motion to remand, Dkt. No. 52, and defendants' motions to dismiss, strike, and compel arbitration, Dkt. Nos. 50 and 51, are now pending before the court.

The court denies the motion to remand, grants the motion to compel arbitration and dismisses the case. Dkt. Nos. 51 and 52. The court does not reach the motion to strike certain claims. Dkt. No. 50.

## I.  BACKGROUND

On September 9, 2013, plaintiff, a California resident, filed a Complaint in state court against defendants, alleging that her employer, EMC Corporation and EMC Peripherals (collectively "corporate defendants"), and various coworkers and managers began treating her differently after she announced her pregnancy and went on maternity leave, in violation of employment discrimination laws. Dkt. No. 1 at 14-37 (Complaint). The complaint asserts nine causes of action against the corporate defendants: (1) Discrimination based on Sex and Pregnancy in Violation of FEHA (California Fair Employment and Housing Act, Cal. Gov. Code § 12900 et seq.); (2) Harassment based on Sex and Medical Condition; (3) Failure to Prevent Discrimination and Harassment; (4) Retaliation; (5) Failure to Accommodate; (6) Failure to Allow Employee to Return to Work After Pregnancy Leave; (7) Wrongful Termination in Violation of Public Policy; (8) Intentional Infliction of Emotional Distress; and, (9) Declaratory Judgment and Injunctive Relief. Plaintiff also asserts four claims against individual defendants Drew, Desmarais, Fisher, Millman and Noy: (1) Harassment based on Sex and Medical Condition; (2) Retaliation; (3) Intentional Infliction of Emotional Distress; and, (4) Declaratory Judgment and Injunctive Relief.

Plaintiff alleges that after she announced her pregnancy, her supervisor Kristie Drew removed her from an important new assignment, became overly critical of her work, and began imposing daily demands on plaintiff that were not placed on her male colleagues.  Complaint ¶ 30. Plaintiff alleges that Drew "made certain plaintiff was shut off from group work projects, took away plaintiff's usual job functions and completely ostracized plaintiff." *Id.*

After notifying Drew and EMC's Human Resources department of her maternity leave plans, plaintiff received her first negative performance review and was told that her position at EMC was being eliminated. *Id.* ¶¶ 31-33. Plaintiff was then told by Drew and Desmarias, a human resources employee, that she would be terminated at the conclusion of her maternity leave. *Id.* ¶ 34. While on maternity leave, plaintiff applied to different positions within EMC, including positions with Millman and Noy, in hopes of returning to work at EMC at the conclusion of her maternity leave. *Id.* ¶ 35. Plaintiff was not accepted to any of the positions she applied for.  Plaintiff requested help looking for a new position within EMC from Fisher, a human resources manager, but Fisher

did not extend plaintiff's employment or place her in a new position. *Id.* ¶ 36. Plaintiff therefore alleges that defendants Millman, Noy, and Fisher "conspired between and amongst each other…in order to prevent plaintiff from transferring to a qualified position." *Id.*

On October 16, 2013, Defendants filed a Notice of Removal on the basis of diversity jurisdiction due to the fraudulent or sham joinder of Millman and Noy. Dkt. No. 1 (Notice of Removal). Millman and Noy are the only individual defendants who reside in California. Defendants also argued that although EMC Peripherals, Inc. is registered to do business in California, it is not incorporated in California and its central place of business is not located in California. *Id.*

Following an intradistrict reassignment, see Dkt Nos. 48 and 49, defendants re-noticed their motion to dismiss and motion to strike portions of plaintiff's complaint, Dkt. No. 50, and their motion to compel arbitration, Dkt. No. 51. Plaintiff re-noticed her motion to remand. Dkt. No. 52. Plaintiff has not filed an opposition to the motions to dismiss, strike, or compel arbitration, but did file responses to the original motions when they were noticed before Judge Alsup. *See* Dkt. No. 30 (response to motion to dismiss/strike); Dkt. No. 31 (response to motion to compel arbitration). Defendants filed an opposition to plaintiff's re-noticed motion to remand, Dkt. No. 53, and plaintiff has not filed a reply, although she did file a reply on the original motion, Dkt. No. 45. The court considered plaintiff's earlier-filed oppositions and replies in deciding these motions.

## II. ANALYSIS

### A. Motion to Remand

The court begins with the motion to remand because it implicates this court's jurisdiction to hear the matter. Defendants removed on the basis of diversity jurisdiction, taking the position that Millman and Noy, who are California residents, were fraudulently joined to defeat the complete diversity requirement. Dkt. No. 1 (Notice of Removal). Plaintiff filed a motion to remand, arguing that that Millman and Noy were not fraudulently joined. Dkt. No. 52 (Notice of Motion); Dkt. No. 36 (Mem. in Support).

### 1. Citizenship of EMC Peripherals

In their removal papers, defendants alleged that EMC Peripherals, Inc. is not a separate legal entity from EMC Corporation, which is incorporated and has its principal place of business in Massachusetts. Dkt. No. 1 at 2. While Plaintiff did mention in her motion to remand that EMC Peripherals is "located in Santa Clara County," Dkt. No. 36 at 2, she made no substantive arguments about EMC Peripherals until her reply. Dkt. No. 45. Generally, arguments not raised until the reply are waived. *Dytch v. Yoon*, Case No. 10–02915–MEJ, 2011 WL 839421, at *3 (N.D. Cal. Mar.7, 2011). The court agrees with defendants that EMC Peripherals is not a California citizen.

For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). EMC Corporation is incorporated in Massachusetts and has its principal place of business in Massachusetts. Complaint at ¶ 2; Dkt. No. 7, Magnan Decl. ¶ 3. EMC Peripherals is not a separate legal entity, but is simply the name under which EMC Corporation does business as in California. Complaint at ¶ 3; Magnan Decl. ¶ 4. EMC Peripheral's "doing business as" registration does not render a corporate citizen of California. *See Carter v. Clear Fir Sales Co.*, 284 F. Supp. 386, 387 (D. Or. 1967). Plaintiff did not allege that EMC Peripheral's principal place of business is in California.  The court finds that EMC Peripheral is a citizen of Massachusetts and is diverse from plaintiff.

### 2. Defendants Millman and Noy

Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). Further, the defendant "is entitled to present the facts showing the joinder to be fraudulent." *Id.*

Plaintiff has alleged four causes of action against Noy and Millman: harassment, retaliation, intentional infliction of emotional distress, and a claim for injunctive relief.  Plaintiff's allegations against Noy and Millman are that (1) they did not respond to her inquiry about a job in their departments, (2) did not hire her, and (3) "conspired between and amongst each other and amongst

others in order to prevent plaintiff from transferring to a qualified position and from returning to work after her pregnancy leave." Complaint ¶ 35.

### a. Harassment

To state a claim for harassment on the basis of sex (including pregnancy and related medical conditions), plaintiff must allege that she belonged to a protected group, she was the subject of unwelcome harassment based on sex (including pregnancy), and that the harassment was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment. *Fisher v. San Pedro Peninsula Hospital*, 214 Cal. App. 3d 590, 608 (1989).

Harassment is "a type of conduct not necessary to a supervisor's job performance." *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 63 (1996). "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Id.*

Here, the conduct plaintiff alleges cannot constitute harassment as a matter of law. Plaintiff's only factual allegation of Noy and Millman's conduct is that they did not respond to her emails and did not hire her for positions in their groups. Plaintiff's allegation that Noy and Millman "conspired" against her is a legal conclusion lacking factual support and is not sufficient to state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (legal conclusions must be supported by adequate factual allegations to survive a motion to dismiss). Hiring and firing decisions are personnel management activity and are not the basis for harassment liability under the FEHA. Furthermore, neither Millman nor Noy even knew plaintiff had been pregnant. Dkt. No. 6, Millman Decl. ¶ 8; Dkt. No. 5, Noy Decl. ¶ 8.

### b. Retaliation

California law clearly establishes that plaintiff cannot state a claim for retaliation against individual defendants. *See Jones v. Lodge at Torrey Pines P'ship,* 42 Cal. 4th 1158, 1160 (2008) ("The employer, but not nonemployer individuals, may be held liable [for retaliation under the California Fair Employment and Housing Act]." No amendment to plaintiff's complaint can overcome this deficiency.

...

### c. Intentional infliction of emotional distress

To state a claim for intentional infliction of emotional distress, plaintiff must allege (1) the defendant engaged in extreme and outrageous conduct; (2) plaintiff suffered extreme or severe emotional distress; and (3) the defendant's conduct was the actual and proximate cause of the plaintiff's distress. *Ortaliza v. Gen. Mills. Inc.*, 56 F.3d 72 (9th Cir.1995). Here, the only conduct alleged is that Millman and Noy did not respond to plaintiff's emails and did not hire her for positions in their department. This is not "extreme and outrageous" and plaintiff has not suggested any other behavior that could support an intentional infliction of emotional distress claim.

### d. Injunctive relief

Plaintiff's claim for injunctive relief asks for "a declaration that the actions, policies, and practices of Defendants…are unlawful." Complaint ¶ 105. Because plaintiff has not shown that any of Millman or Noy's actions were unlawful, she is not entitled to any injunctive relief.

Plaintiff has not stated a cause of action against Noy or Millman, and based on the allegations in the complaint and arguments made to the court the court finds that even if plaintiff is granted leave to amend, she cannot state a claim. Because Noy and Millman are ignored for purposes of diversity jurisdiction, *McCabe*, 811 F.2d at 1339, complete diversity exists.  Neither party disputes that the amount in controversy exceeds $75,000. Therefore, the court has jurisdiction under 28 U.S.C. § 1332(a). The motion for remand is denied.

**B. Motion to Compel Arbitration**

Defendants move to compel binding arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, and to dismiss or stay the case pending arbitration. Dkt. No. 51. "Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue." *United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002). When plaintiff was hired at EMC, she was given a "Key Employee Agreement" which contained an arbitration clause stating "binding arbitration shall be the sole and exclusive remedy for resolving any individual Legal Dispute…initiated either by the Company or by you arising out of or relating to your employment by EMC Corporation…" Dkt. No. 51-1, Broder Decl. ¶ 2 and Ex. A.

Chau argues that she should not be compelled to arbitrate because (1) defendants have not established the existence of a valid, signed arbitration agreement, (2) the agreement is procedurally and substantively unconscionable, and (3) defendants waived their right to compel arbitration.

### 1. Existence of a signed arbitration agreement

Chau's first argument is that the declaration of Stewart Broder, Dkt. No. 51-1, is incompetent to establish the existence of an arbitration agreement. Chau also argues that the agreement does not apply to EMC Peripherals and was never signed.

The Broder declaration is sufficient to authenticate the Key Employee Agreement and Arbitration Policy. Broder, an assistant general counsel for EMC, testifies that based on his personal knowledge and his review of records kept in the ordinary course of business, the exhibit attached to his declaration is a true and correct copy of Chau's Key Employee Agreement and EMC's Arbitration Policy. Broder Decl. ¶¶ 1,2. The arbitration agreement applies to both EMC and EMC Peripherals. The documents specifically refers to EMC "together with its subsidiaries" and "EMC Corporation and/or its affilietes." Broder Decl. Ex. A at 3, 4, 8.

Defendants have also established that Chau signed the Key Employee Agreement, including accepting the arbitration provision. Broder Decl. Ex. A at 4; Cal. Civ. Code § 1633.1 *et seq*. Chau agreed that "an electronic signature by me (checking Yes) is valid as if I had signed the documents referred to below by hand." *See also* Cal. Civ. Code § 1633.2(h) (defining "electronic signature" to include a process [i.e. checking Yes] executed by a person with the intent to sign the electronic record). Accordingly, defendants have established that a valid, signed, arbitration agreement exists between plaintiff and defendants. Neither party disputes that the agreement encompasses the issues in this case.

### 2. Enforceability of arbitration agreement

Chau next argues that the arbitration agreement is unenforceable because it is procedurally and substantively unconscionable. "Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid. California law utilizes a sliding scale to determine unconscionability." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (citation omitted). "[T]he more substantively oppressive the contract term, the less evidence of

procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).

Chau relies primarily on *Chavarria* to show that the EMC arbitration agreement is unconscionable. There are similarities between the EMC agreement on the policy found unconscionable in *Chavarria*. For example, it appears that the EMC agreement "was a condition of applying for employment and that the policy was presented on a "take it or leave it" basis with no opportunity for [plaintiff] to negotiate its terms." *Chavarria*, 733 F.3d at 922. While defendants dispute this, they do not provide any facts supporting their contention that Chau could have negotiated the employee agreement. It is also unclear when the actual terms of the arbitration policy was provided to plaintiff. The signed agreement only contains a notice of policy, although the document does inform plaintiff that "EMC policies can be viewed on the company's Intranet Channel." *See* Broder Decl. Ex. A at 4, 7. The "take it or leave it" nature of the contract and the lack of opportunity to negotiate tend to show that the arbitration agreement is procedurally unconscionable under California law. *See, e.g. Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (finding agreement procedurally unconscionable where employee had no opportunity to opt out of the agreement, employee had no opportunity to negotiate, and agreement was presented on an adhere-or-reject basis).

However, there are numerous material differences between the EMC arbitration policy and the *Chavarria* policy. Procedurally, Chau acknowledged that she given adequate opportunity to review the policy, including with a legal advisor, before signing. Broder Decl. Ex. A at 4. Substantively, the EMC policy provides for a neutral arbitrator selected according to the JAMS Employment Arbitration Rules and Procedures, has no limitation on the remedies or damages an employee may seek, allows for discovery, requires a written decision stating the factual and legal bases for the decision, and provides that EMC will pay for the arbitrator. *Id.* at 11-12. The policy is not substantively unconscionable. *Armendariz*, 24 Cal. 4th at 91, 103, 106, 110 (discussing arbitration provisions which would be enforceable). Because Chau has failed to show that the arbitration agreement is both procedurally *and* substantively unconscionable, it is not invalid under California law. *Armendariz*, 24 Cal. 4th at 114.

### 3. Waiver

Chau's final argument is that defendants waived their right to compel arbitration by failing to mediate with plaintiff and removing the matter to federal district court before filing the motion to compel arbitration. Arbitration rights are subject to constructive waiver if three conditions are met: (1) the waiving party must have knowledge of an existing right to compel arbitration; (2) there must be acts by that party inconsistent with such an existing right; and (3) there must be prejudice resulting from the waiving party's inconsistent acts. *See Hoffman Const. Co. v. Active Erectors*, 969 F.2d 796, 798–99 (9th Cir.1992); *United Computer Systems, Inc*, 298 F.3d at 765. Here, Chau has not shown that defendants acted inconsistently with their intent to arbitrate or prejudiced plaintiff. All defendants have done is "selected the forum in which it would file its Motion to Dismiss or in the Alternative to Compel Arbitration." *Cooper v. QC Fin. Servs., Inc.*, 503 F. Supp. 2d 1266, 1274 (D. Ariz. 2007) (finding removal did not waive right to compel arbitration). Failing to respond to plaintiff's request to mediate is not inconsistent with an intent to arbitrate.

Because defendants have established the existence of a valid arbitration agreement which encompasses the dispute in this case, the court grants the motion to compel arbitration and dismisses the case. The court does not reach the motion to dismiss and strike specific claims.

### III. ORDER

For the reasons explained above, the court denies the motion to remand; grants the motion to compel arbitration; does not reach the motion to strike and dismiss specific claims as moot; and dismisses the case.

Dated: February 28, 2014

_Ronald M. Whyte_
Ronald M. Whyte
United States District Judge

ORDER
Case No. C-13-04806-RMW
LRM

- 9 -